IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JANET SUE MORGAN, ET AL.

                                                     **PLAINTIFFS**

VS.

                              CIVIL ACTION NO.3:03cv435WS

MERCK & CO, INC., ET AL.

                                           **DEFENDANTS**

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING DEFENDANTS' PENDING MOTIONS

THIS CAUSE came before the Court on:

1.    Plaintiffs' Motion to Remand (#6);

2.    Defendant Dr. Randall Smith's Motion for Summary Judgment (#19);

3.    Defendant Merck & Co., Inc.'s ("Merck") Motion to Reconsider the Court's Order Granting Plaintiffs' Leave to File First Amended Complaint (#23);

4.    Merck's Motion to Stay Order Granting Plaintiffs Leave to File Amended Complaint (#24);

5.    Plaintiffs' Motion For Leave To File First Amended Complaint (#14).

Having reviewed the Motions, briefs, supplemental submissions, exhibits and legal authorities submitted by the parties, having heard the argument of counsel and having otherwise fully considered the above-referenced Motions, the Court is of the opinion that the Defendants' Motions are well-taken and should be granted and that Plaintiffs' Motion to Remand and Plaintiffs' Motion For Leave To File First Amended Complaint are not well-taken and should be denied.



IT IS HEREBY ORDERED that:

1.    Plaintiffs' Motion to Remand (#6) is denied, because Dr. Randall Smith is fraudulently joined.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship as between Plaintiffs and Merck, the only properly joined defendant, and the amount in controversy for each plaintiff exceeds $75,000, exclusive of interest and costs.

2.    Dr. Randall Smith's Motion for Summary Judgment (#19) is granted.  Judgment is hereby entered in favor of Dr. Smith.

3.    Dr. Smith and Fictitious Defendants A, B, C and D are dismissed with prejudice from this lawsuit.

4.    Merck's Motion to Reconsider the Court's Order Granting Plaintiffs Leave to File First Amended Complaint (#23) and Merck's Motion to Stay Order Granting Plaintiffs Leave to File Amended Complaint (#24) are granted.  Accordingly, the Court's Order granting Plaintiffs' Motion For Leave To File First Amended Complaint (#17) is vacated, Plaintiffs' Motion For Leave To File First Amended Complaint (#14) is denied, and Plaintiffs' First Amended Complaint (#13) is stricken and dismissed.

5.    The Stay Order entered on the Rule 16.1 Case Management Conference (#9) is lifted.  The parties shall submit a Case Management Order to the Court by 5:00 p.m. on Friday, February 27, 2004.

SO ORDERED this the _____ day of _____ 2004.

_____
UNITED STATES DISTRICT JUDGE

Approved as to form:

_Dave Miceli_ (ANT w/ Permission)
Counsel for Plaintiffs

_[signature]_
Counsel for Defendant Merck & Co., Inc.

_Michael Coleman_ (ANTTY permission)
Counsel for Defendant Randall Smith, M.D.

JACKSON 859879v1

3

IN THE CIRCUIT COURT OF
SMITH COUNTY, MISSISSIPPI

Janet Sue Morgan, an Individual,
and the individuals listed on Exhibit "A",

    PLAINTIFF,

VS.

MERCK AND CO. (hereinafter "Merck");
RANDALL SMITH, M.D.,
a Mississippi resident; and fictitious
Defendants A, B, C and D being those
persons, firms or corporations whose
actions, inactions, fraudulent suppression,
fraud, scheme to defraud and/or other
wrongful conduct caused or contributed to
the Plaintiff's injuries and damages, and
whose true names and identities are
presently unknown to the Plaintiff but will
be substituted by amendment when
ascertained,

    DEFENDANTS.

§ § § § § § § § § § § § § § § § § § § § §

CIVIL ACTION NO. 2002-561

## COMPLAINT

**Trial By Jury is Requested**

1.    This is a civil action brought on behalf of Plaintiff, Janet Sue Morgan, who was prescribed and used the prescription medication VIOXX (Rofecoxib).  This action seeks monetary damages for personal injuries and or death pursuant to MS Code Ann. Sec. 11-7-13, and damages caused by the drugs named herein and ingested by Plaintiffs.

2.    Plaintiff, Janet Sue Morgan, is an adult resident of Smith County, Mississippi.

3.    The individuals listed on the attached Exhibit "A", are additional Mississippi resident Plaintiffs joined under Rule 20 of the Mississippi Rules Of Civil Procedure.  Exhibit "A", is a one page document containing an alphabetized list of the names of twenty-nine (29)

**FILED**

DEC 3 1 2002

Plaintiffs, beginning with Eddie William Adams, on behalf of Janet Adams, Deceased and ending with Rosie C. Wheaton.

4.      When the word "Plaintiffs" is used herein, it is meant to refer to all Plaintiffs mentioned in Exhibit "A" and the Plaintiffs named in the style of this Complaint, except as to Count VI, which relates solely to Defendant Randell Smith, M.D.

5.      Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation. At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib). Defendant Merck may be served through its registered agent: CT Corporation System; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.      Defendant Randell Smith, M.D. is a physician licensed by the State of Mississippi with his residence and principal place of business in Forrest County, Mississippi and can be served at 415 S 28th Avenue, Hattiesburg, Mississippi 39401. Venue is proper in Smith County, Mississippi as one or more of the Defendants do business in Smith County, Mississippi, one or more of the Plaintiffs reside in Smith County, Mississippi; and one or more of the Plaintiffs' actions occurred in Smith County.

7.      Personal jurisdiction and subject matter jurisdiction are appropriate in this court as to all Defendants, as all Defendants have done business in Smith County, either directly or by agent, and have thus availed themselves of this jurisdiction.

8.      The Plaintiffs' claims accrued in whole or in part in this judicial district and one or more of the Plaintiffs resides in this judicial circuit. Defendant Merck is a foreign corporation which has been and is currently engaged in business, directly or by authorized agent, in this

2

judicial district. Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

9.    Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendant Merck did manufacture, design, package, market and distribute this drug. Defendant Merck encouraged the use of this drug in improper patients, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. Merck aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. Merck did this to increase sales and profits.

10.    At all times relevant hereto, Merck actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Merck's conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

## COUNT I

11.    Plaintiff alleges all prior paragraphs of this complaint as if fully set out herein.

12.    The pharmaceutical Vioxx (Rofecoxib) designed, manufactured, sold and/or supplied by Defendant Merck, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

3

13.    Further, the pharmaceutical Vioxx designed, manufactured, marketed, sold and/or supplied by Merck was defective in its marketing due to inadequate warnings or instructions, both independently and when coupled with the aggressive marketing campaign that Merck initiated in relation to this product, both directly to the consuming public and indirectly to the physicians through drug sales representatives.

14.    Vioxx was defective due to inadequate testing and inadequate warnings.

15.    Additionally, Merck failed to provide timely and adequate post-marketing warnings or instructions after it knew or learned of the risk of injury from Vioxx via post-marketing data. The defective nature of this product is a contributing cause of Plaintiff's injury and damages.

WHEREFORE, this Plaintiff demands judgment against Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT II

16.    Plaintiff realleges all prior paragraphs of the Complaint as if set out herein.

17.    Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of Vioxx (Rofecoxib) into the stream of commerce. Merck failed to exercise ordinary care in the design, manufacture, sale, testing and/or distribution of Vioxx into the stream of commerce.

18.    Merck knew or should have known that Vioxx created an unreasonable risk of bodily harm, including the risk of death.

19.    Despite the fact that Defendant Merck knew or should have known that Vioxx caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, Merck continued to market, and continue to market to this day, Vioxx to the

4

consuming public, when there were and are adequate and safer alternative methods of treatment, or opportunities for more meaningful warnings.

20.    Defendant Merck knew or should have known that consumers such as Plaintiff would foreseeably suffer injury or death as a result of its failure to exercise ordinary care as described above. Defendant's negligence was a contributing cause of Plaintiff's injuries.

WHEREFORE, this Plaintiff demands judgment against Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT III

21.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

22.    Defendant Merck made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to its product, Vioxx.

23.    Defendant Merck through their detail sales representatives, made representations of the safety and efficacy of the product, Vioxx.

24.    Vioxx does not conform to the express representations made through Merck's advertising and marketing efforts.

25.    Vioxx does not conform to the express representations made by Merck's agents/sales representatives.

26.    Merck's conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiff.

WHEREFORE, this Plaintiff demands judgment against Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT IV

27.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

28.    At the time Merck marketed, sold and distributed Vioxx for use by the general consuming public, including Plaintiff, Merck knew of the use for which Vioxx was intended and implicitly warranted the product to be of merchantable quality, and safe and fit for such use.

29.    Plaintiff reasonably relied upon the skill and judgment of Merck as to whether Vioxx was of merchantable quality and safe and fit for its intended use.

30.    Contrary to such implied warranty, Vioxx was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used as described above.

31.    Merck's conduct in this regard was a contributing cause of Plaintiff's injuries and damage.

WHEREFORE, this Plaintiff demands judgment against Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT V

32.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

33.    Defendant Merck negligently, recklessly, intentionally and fraudulently made material misrepresentations that Vioxx was safe and effective. Merck represented Vioxx as safe so that the general consuming public, including Plaintiffs, in particular, would rely upon said representations when purchasing said product.

34.    Prior to and following the introduction of Vioxx into the market as a prescribable pharmaceutical medication, Defendant Merck set in motion a public relations and advertising/marketing campaign to market their product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising. Defendant's representations made concerning Vioxx as a safe and effective drug were made so

6

that Plaintiffs and the general consuming public would rely on said representations and seek prescriptions for this drug from their treating physicians. In fact, Plaintiff did rely on Defendant Merck's representations.

35.    At the time Defendant Merck made these representations, it was aware that these representations were false and/or made these representations with a reckless disregard to their truth. As a result of Defendants' fraud and misrepresentation, Plaintiffs suffered various injuries and damages.

WHEREFORE, this Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT VI

36.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

37.    Plaintiff Janet Sue Morgan sought the care and treatment of Defendant Randell Smith, M.D. (hereafter "Smith") for various ailments and maladies.

38.    In relation to said care and treatment, Defendant Smith prescribed Vioxx to Plaintiff.

39.    Defendant Smith knew, or should have known, of the dangerous side effects of selectively inhibiting the COX-2 enzyme, and his prescribing said medication in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under like or similar circumstances and rises to the level of medical negligence.

40.    Defendant Smith's medical negligence was a direct and proximate cause of the Plaintiff's injuries

WHEREFORE, this Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

7

## DAMAGES

41.    Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain injuries and damages as a direct and proximate result of Defendant's conduct and Plaintiffs will respectfully request the Court and jury to determine the amount of loss Plaintiffs have suffered and incurred, in the past and in the future, not only from a financial standpoint, but also in terms of good faith, freedom from pain, and worry.

42.    At all times relevant hereto, Defendant Merck actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this product. Merck's conduct exhibits such a entire want of care as to establish that its actions were a result of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiffs' individual rights. The Plaintiffs, therefore, are entitled to punitive damages from Merck.

43.    Plaintiffs hereby request a trial by jury on all issues in this case and hereby tenders the requisite jury fee simultaneously with this Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays that the Defendant be cited to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendant, including cost of Court, pre-judgment and post-judgment interest at the legal rates, and that Plaintiffs have such other and further relief, both general and special, at law and in equity, to which she may be justly entitled under the facts and attending circumstances.

_John Raymond Tullos_
JOHN RAYMOND TULLOS (MSN8303)

TULLOS & TULLOS
Post Office Box 74
Raleigh, Mississippi 39153
Phone  (601) 782-4242
Fax     (601) 782-4439

_Roman Shaul (by of fullis with express permission)_
ROMAN SHAUL (MSN99873)
ANDY D. BIRCHFIELD, JR.
DAVID F. MICELI
Attorneys for Plaintiff

OF COUNSEL:
BEASLEY, ALLEN, CROW, METHVIN,
   PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone  (334) 269-2343
Fax     (334) 223-1236

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

JUN 17 2003

J.T. NOBLIN, CLERK
BY_____ DEPUTY

ANNIE PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO

PLAINTIFFS

VS.

CIVIL ACTION NO. 4:03CV12LN

MERCK & CO., INC.; G.D. SEARLE
AND CO., A SUBSIDIARY OF PHARMACIA,
INC., A FOREIGN CORPORATION;
MONSANTO COMPANY; PFIZER, INC.;
JOHN DOE #1, M.D.; JOHN DOE #2,
M.D., JOHN DOE #3, M.D., AND JOHN
DOE #4 M.D., ALL MISSISSIPPI
PHYSICIANS WHOSE TRUE NAMES AND
IDENTITIES ARE PRESENTLY UNKNOWN
OR UNCONFIRMED BUT WILL BE
SUBSTITUTED BY AMENDMENT

DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs Amos Porter, Flora Sumrall and Annie Laurie Varnado to remand and motion for leave to amend the complaint. Defendants G.D. Searle LLC, Pharmacia Corporation, Monsanto Company (now known as Pharmacia Corporation) and Pfizer, Inc. have responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that both the motion to amend and the motion to remand should be denied.

Plaintiffs, through counsel, filed this lawsuit in the Circuit Court of Jasper County on December 31, 2002, seeking to recover damages for injuries allegedly sustained as a result of their having taken one or both of the prescription pain relief



drugs Celebrex and Vioxx.  Plaintiffs, all Mississippi residents,
named as defendants five non-resident pharmaceutical
manufacturers, and also included four "John Doe" defendants, all
of whom were alleged to be "Mississippi physicians whose true
names and identities are presently unknown or unconfirmed."
On January 10, 2003, the manufacturer defendants, who had not yet
been served with process, removed the case to this court on the
basis of diversity jurisdiction.  In their motion to remand, filed
promptly following removal, plaintiffs contend that defendants'
pre-service removal constitutes a defect in the removal procedure
which necessitates remand.  Plaintiffs further urge that in the
event the case is not remanded on that basis, they should be
allowed to amend their complaint to identify those "Mississippi
physicians" who were initially identified only as "John Doe"
defendants, as a consequence of which complete diversity will be
lacking, and remand thus required pursuant to 28 U.S.C. § 1447(e).

        There is no question but that there is now (and that there
was at the time of removal) jurisdiction based on diversity of
citizenship pursuant to 28 U.S.C. § 1332.  The amount in
controversy exceeds the $75,000 threshold for jurisdiction under
the diversity statute (a point which plaintiffs do not dispute);
and although plaintiffs, themselves Mississippi residents, named
John Doe defendants whom they represented were also Mississippi
residents, the law is clear that "the citizenship of defendants
sued under fictitious names shall be disregarded" in determining
whether there is complete diversity for removal purposes.  28

2

U.S.C. § 1441(a).  The remaining defendants named by plaintiffs in the complaint are all citizens of states other than Mississippi, and consequently there is complete diversity of citizenship between the parties.

Moreover, while plaintiffs contend that under the Supreme Court's decision in Murphy Brothers v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999), defendants could not properly remove the case until they were formally served with process and that defendants' pre-service removal was therefore defective, neither this court, nor any court identified by plaintiff or of which this court is aware, has interpreted Murphy Brothers as precluding removal by a defendant prior to formal service of process.  The Court in Murphy Brothers held only that a defendant is not obligated to take action in a case until after it has been properly served with process; it did not hold that a defendant must await service to take action.  See Mauldin v. Blackhawk Area Credit Union, No. 01 C 50221, 2002 WL 23830, *1 (N.D. Ill. January 2002)(holding that since the defendant was not properly served with process, "the thirty-day removal technically never really began," and therefore, "[the

---

[1]    In Murphy Brothers, the Supreme Court, applying the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process," concluded that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service."  Id. at 347-48.

3

defendant's) notice of removal was timely"). Defendants' removal

was therefore both substantively and procedurally proper.

The question then, becomes whether plaintiffs should now be

permitted to amend their complaint, post-removal, to include as

defendants those physicians who were identified as John Doe

defendants in their original complaint. For the reasons that

follow, the court is of the opinion that in this case, plaintiffs'

request to amend should be denied.

    28 U.S.C. § 1447(e) states:

    (e) If after removal the plaintiff seeks to join
    additional defendants whose joinder would destroy
    subject matter jurisdiction, the court may deny joinder,
    or permit joinder and remand the action to the State
    court.

While the statute, by its terms, refers only to post-removal

efforts by plaintiffs to "join additional defendants," the Fifth

Circuit has recognized that § 1447(e) applies, as well, to the

identification of fictitious defendants after removal. See Doleac

ex rel. Doleac v. Michalson, 264 F.3d 470, 475 (5ᵗʰ Cir. 2001).

    In Hensgens v. Deere & Company, 833 F.2d 1179 (5th Cir.

1987), the Fifth Circuit addressed the standard applicable to

where a plaintiff seeks to amend to add a non-diverse defendant

following removal of an action on the basis of diversity

jurisdiction. The court held that in such cases, the district

court "should consider the extent to which the purpose of the

amendment is to defeat federal jurisdiction, whether plaintiff has

been dilatory in asking for amendment, whether plaintiff will be

significantly injured if amendment is not allowed, and any other

4

factors bearing on the equities." Id. at 1182. Although this case differs somewhat from the typical § 1447(e) case in that the non-diverse defendants proposed to be identified by the amendment were fictitiously named in the original complaint, that circumstance does not render the Hensgens analysis inappropriate since "the equitable nature of the Hensgens analysis allows the court to consider not only the plaintiff's motive, but other equitable factors," as well. Lacy v. ABC Ins. Co., No. Civ. A. 95-3122, 1995 WL 688786, *2 (E.D. La. Nov. 17, 1995) (such factors might include "the strength of plaintiff's case against the non-diverse defendants and the diverse defendant's ability to anticipate the citizenship of the fictitiously named defendant(s) at the time of removal").

Turning, then, to the Hensgens factors, in the case at bar, it may be somewhat difficult to characterize as truly "dilatory" plaintiffs' request to amend since plaintiffs did indicate in their original complaint that they were desirous of suing the physicians who prescribed Vioxx and/or Celebrex to them. On the other hand, there can be no doubt that plaintiffs themselves knew – they must have known – the identity of their own prescribing physicians at the time the complaint was filed; and yet their attorneys, rather than take the time to ascertain this information from their clients, resorted to the expedient of suing the doctors as fictitious parties. Apparently, this was done in counsels' haste to get the complaint filed before Mississippi's recently enacted medical malpractice tort reform law took effect on January

5

1, 2003.[2]  The simple fact is, plaintiffs' counsel could easily have known and confirmed the identity of the John Doe defendants before filing this suit, and yet did not seek to learn the identity of the John Doe defendants, or any of them, until after the case was removed.[3]  Given that the identity of these defendants could have been known before suit was filed, it can fairly be said that the post-removal attempt to join them as defendants is "dilatory."

That brings the court to the question of plaintiffs' purpose, or motivation, in suing, or attempting to sue, these doctors.  It is perhaps true in the usual case that the fact that a plaintiff has included a defendant as a fictitious defendant in his state court pleading would tend to belie an inference that the plaintiff's motivation for seeking to amend post-removal to substitute a real party for the one previously identified only as a fictitious party is to defeat diversity jurisdiction.  See Gilberg v. Stepan Co., 24 F. Supp. 2d 355, 358 (E.D. La. 1998) (fact that the plaintiff was unable to effect the substitution before the defendant removed "does not somehow convert any subsequent effort at substitution into a joinder " for the sole

---

[2]     As defendants note, this new legislation, which took effect the day after plaintiffs' complaint was filed, placed significant restrictions on filing lawsuits against physicians.

[3]     Perhaps they had intended to do this prior to serving the diverse defendants, working under the mistaken impression that the case would not be removable until at least one of the diverse defendants was served, and were foiled in their efforts when the diverse defendants filed their notice of removal prior to service of process.

6

purpose of destroying diversity'"); <u>Davis v. American Commercial</u>
<u>Barge Line Co.</u>, No. Civ. A. 98-537, 1998 WL 341840, at *2 (E.D.
La. June 25, 1998) (substitution of real party for fictitious
party named prior to removal indicates purpose of joinder is not
solely to destroy diversity).  Here, however, the court is
persuaded that plaintiffs' motivation, not just for undertaking to
now substitute these doctors as the real party defendants, but for
having undertaken to sue them in the first place, was to avoid
federal jurisdiction.

Plaintiffs' complaint contains eleven counts, ten of which
are directed against the manufacturer defendants, and assert
products liability based claims, and fraudulent and negligent
misrepresentation by those defendants as to the safety and
efficacy of the products at issue.  A major theme of these counts
- in fact, the major theme - is that the manufacturer defendants
knew of the dangers posed by these drugs all along, and yet they
withheld this information and intentionally marketed them, "both
directly to the consuming public and indirectly to physicians
through drugs sales representatives," as safe and effective, and
at all times, before, during and after marketing the products,
failed to provide adequate warnings or instructions of the
defective nature of the products.  The complaint alleges
throughout that in addition to their marketing to the consuming
public, the manufacturer defendants' sales representatives, who
marketed the products to doctors, made fraudulent
misrepresentations concerning the safety and efficacy of these

7

products. As to the doctors themselves, plaintiffs' complaint contains one count charging medical negligence in which plaintiffs bluntly allege that these physicians prescribed these drugs to plaintiffs, that they "knew, or should have known, of the dangerous side effects of these medications," and that their prescribing these medications "presents a deviation from the standard of care generally exercised by physicians. . . ."

Although the court is aware of the propriety of pleading in the alternative, here, given plaintiffs' explicit, repeated and consistent charge that the manufacturer defendants concealed and misrepresented information about the subject drugs to physicians, plaintiffs' entirely conclusory allegation that the doctors "knew, or should have known, of dangerous side effects of these medications," without any indication of a factual basis for such an allegation, strongly suggests to the court that plaintiffs have sued the physicians only as a means of avoiding federal court. Cf. Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civil Action No. 5:00CVG102LN (S.D. Miss. Sept. 25, 2000) (notwithstanding the plaintiffs' general references to knowledge possessed by "defendants," the complaints, which alleged that the manufacturers undertook to deceive everyone, including the pharmacist defendants, about the safety of their drugs, could not "reasonably and legitimately be construed as alleging any factual basis for the conclusion that any of the pharmacy defendants had any knowledge or reason to know of any of the dangers associated with the product(s) of which plaintiffs contend they were unaware");

8

Brown v. Bristol-Myers Squibb Co., Civil Action No. 4:02CV301LN
(S.D. Miss. Dec. 2, 2002) (same).

While the proposed amended complaint does not disclose any
legitimate basis for suing these defendants, if it were to turn
out that plaintiffs, in fact, do have some basis for suing them,
there is nothing to prevent them from bringing a separate action
against them in state court, and in the court's opinion,
plaintiffs will not be prejudiced if required to proceed against
the doctors separately.[4]  The court herein holds only that
plaintiffs may not sue them in this action.

For the foregoing reasons, it is ordered that plaintiffs'
motion to remand and to amend is denied.

SO ORDERED this 17th day of June, 2003.

_____
UNITED STATES DISTRICT JUDGE

---

[4]    Of course, if required to proceed separately against the
doctor defendants, plaintiffs would no doubt find their claims
subject to the newly enacted medical malpractice tort reform law;
but their efforts to avoid that law in the manner they chose was
of questionable legitimacy to begin with.  Had they a genuinely
cognizable claim against the doctors, they could and should have
made every reasonable effort to properly name them at the outset,
and could and should have pled a proper claim against them.  They
did neither.

9

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF JASPER
COUNTY, MISSISSIPPI

AMOS PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO

**PLAINTIFFS**

VS.

NO. 2002-_12-0236_

MERCK & COMPANY, INC.
(hereinafter "Merck"); G.D. Searle and Co.
(hereinafter "Searle") a subsidiary of
Pharmacia, Inc. (hereinafter "Pharmacia"), a
foreign corporation; Monsanto Company;
Pfizer, Inc.; John Doe #1, M.D., John Doe #2,
M.D., John Doe #3, M.D., and John Doe #4,
M.D., all Mississippi physicians whose true
names and identities are presently unknown
or unconfirmed but will be substituted by
amendment

**FILED**
JASPER COUNTY, MISS.

DEC 3 1 2002

MARK A. ISHEE
CIRCUIT CLERK

**DEFENDANTS**

## COMPLAINT

COME NOW the Plaintiffs, Amos Porter, Flora Sumrall, and Annie Laurie
Varnado, in the above-styled and numbered cause, by and through their attorneys of
record, and file this their Complaint against the Defendants, and in support thereof
would show unto the Court the following, to-wit:

1.      This is a civil action brought on behalf of Plaintiffs who were prescribed
and used the prescription medication VIOXX (Rofecoxib) and/or CELEBREX
(Celecoxib). Plaintiff Sumrall used Vioxx and Celebrex which caused her to suffer renal
problems, severe edema, and other injuries. Plaintiff Porter used Celebrex which
caused him to suffer a stroke and other injuries. Plaintiff Varnado used Vioxx which
caused her to suffer from heart problems, edema and other injuries. This action seeks
damages for personal injuries and damages caused by the drugs named herein and

ingested by Plaintiffs.

2.    Plaintiff Amos Porter is an adult resident of The First Judicial District of Jasper County, Mississippi. Plaintiff Flora Sumrall and Annie Laura Varnado are adult residents of Clarke County, Mississippi.

3.    Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation. At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib). Defendant Merck may be served through its registered agent: CT Corporation System; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

4.    Defendant G. D. Searle & Co. (hereinafter "Searle") is a subsidiary of Pharmacia, Inc., and is upon information, knowledge and belief an Illinois Corporation, and is not registered to do business in Mississippi. As such, Defendant Searle can be served via certified mail through its CEO Alan L. Heller at its principle place of business: 5200 Old Orchard Road, Skobie, Illinois, 60077. At all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Pharmacia is a Deleware Corporation licensed and registered to do business in Mississippi and can be served through its registered agent:   CT Corporation System: 631 Lakeland East Drive; Flowood, Mississippi, 39208.

5.    Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia Inc. and is a Delaware Corporation. At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Monsanto is

-2-

licensed and registered to do business in Mississippi, and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.      Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib).   Defendant Pfizer is licenses and registered to do business in Mississippi and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

7.      Defendants John Doe #1, M.D., John Doe #2, M.D., John Doe #3, M.D., and John Doe #4, M.D., are physicians licensed by the State of Mississippi with residence and/or principal place of business in Mississippi, whose identities are at present unknown or unconfirmed and will be substituted by amendment.

8.      Venue is proper in The First Judicial District of Jasper County, Mississippi as the part of the cause of action and injury occurred in The First Judicial District of Jasper County, Mississippi.

9.      The claims of Plaintiffs accrued in whole or in part in this judicial district and the Plaintiff resides in this judicial circuit.  Some of these Defendants are foreign corporations which have been and are currently engaged in business, directly or by authorized agent, in this judicial district.  Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.     Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies.   Defendant Merck did manufacture, design, package, market and distribute this drug.  This Defendant encouraged the use of this drug in improper customers, misrepresented the safety and

-3-

effectiveness of this drug and concealed or understated its dangerous side effects. This Defendant aggressively marketed this drug directly to the consuming mediums, including, but not limited to, print and television advertisements. This Defendant did this to increase sales and profits.

11.     Celebrex is a pharmaceutical treatment for musculaskeletal joint pain associated with osteoarthritis among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Seale, Pharmacia, Monsanto and Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

12.     At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their products as herein set forth, yet continued to design, manufacture, market, distribute and sell their products so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products. The drug company Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

## COUNT I

13.    Plaintiffs allege all prior paragraphs of this complaint as if fully set out herein.

14.    The pharmaceutical Vioxx (Rofecoxib) designed, manufactured, sold and/or supplied by Defendant Merck, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

15.    Further, the pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign, both directly to the consuming public and indirectly to physicians through drug sales representatives.

16.    The pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective due to inadequate testing.

17.    Additionally Defendant Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx, via post-marketing data. The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Varnados' injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado deny judgment against Defendant Merck in an amount of compensatory and punitive damages as a jury deems reasonable plus costs.

## COUNT II

18.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

herein.

19.   The pharmaceutical Celebrex (Celecoxib) designed, manufactured, sold and/or supplied by Defendants Searle, Pharmacia, Monsanto and/or Pfizer, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

20.   Further, the pharmaceutical Celebrex designed, manufactured, sold and/or supplied by one or more of the above-referenced Defendants was defective in its marketing due to inadequate warnings or instructions, both independently and when coupled with the aggressive marketing warnings or instructions, both independently and when coupled with the aggressive marketing campaign the above-referenced Defendants initiated in relation to this product, both directly to the consuming public and indirectly to the physicians through drug sales representatives.

21.   The pharmaceutical Celebrex designed, manufactured, distributed, marketed, sold and/or supplied by one or more of the above-referenced Defendants was defective due to inadequate testing.

22.   Additionally, Defendants Searle, Pharmacia, Monsanto and Pfizer failed to provide timely and adequate post-marketing warnings or instructions after the Defendants knew or learned of the risk of injury from Celebrex via post-marketing data. The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT III

23.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out herein.

24.    Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce.  Defendant Merck failed to exercise ordinary care in the design, manufacturer, marketing, sale testing and/or distribution of Vioxx into the stream of commerce.  Defendant Merck knew or should have known that Vioxx created an unreasonable risk of bodily harm, including the risk of death.

25.    Despite the fact that Defendant Merck knew or should have known that Vioxx caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, this Defendant continued to market, and to this day continues to market, Vioxx to the consuming public when there were and are adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

26.    Defendant Merck knew or should have known that consumers such as Plaintiffs Sumrall and Varnado would foreseeably suffer injury or death as a result of the Defendant's failure to exercise ordinary care as described herein.  Defendant's negligence was a contributing cause of Plaintiffs Sumrall and Varnado's injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IV

27.    Plaintiffs reallege all prior paragraphs of the Complaint as if set out herein.

-7-

28.    Defendants Searle, Pharmacia, Monsanto and Pfizer had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of Celebrex (Celecoxib) into the stream of commerce. These Defendants failed to exercise ordinary care in the design, manufacture, sale, testing and/or distribution of Celebrex in the stream of commerce.

29.    These Defendants knew or should have known that Celebrex created an unreasonable risk or bodily harm, including the risk of death.

30.    Despite the fact that Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that Celebrex caused unreasonably, dangerous side effects which many users would by unable to remedy by any means, these Defendants continued to market, and continue to, market to this day, Celebrex to the consuming public, when there were and are adequate and safer alternative methods of treatment, or opportunities for more meaningful warnings.

31.    Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that consumers such as Plaintiffs Sumrall and Porter would foreseeably suffer injury or death as a result of Defendants' failure to exercise ordinary care as described above.  Defendants' negligence was a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT V

32.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

hereto.

33.    Defendant Merck made express representations to the consuming public at large through its aggressive marketing and advertising campaigns relative to its product, Vioxx.

34.    Defendant Merck, through its detail sales representatives, made representations regarding the safety and efficacy of its product, Vioxx.

35.    Vioxx does not conform to the express representations made through Defendant Merck's advertising.

36.    Vioxx does not conform to the express representations made by Defendant Merck's agents/sales representatives.

37.    Defendants Merck conduct in this matter was contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demands judgment against Defendant Merck in such and amount of compensatory and damages as a jury deems reasonable, plus costs.

## COUNT VI

38.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

39.    Defendants Searle, Pharmacia, Monsanto and Pfizer made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Celebrex.

40.    Defendants Searle, Pharmacia, Monsanto and Pfizer through their detail sales representatives, made representations of the safety and efficacy of their product,

Celebrex.

41.    Celebrex does not conform to the express representations made through Defendants' advertising.

42.    Celebrex does not conform to the express representations made by Defendants' agents/sales representatives.

43.    These Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Porter.

WHEREFORE, plaintiffs Sumrall and Porter demand judgment against Defendants Searle Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VII

44.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

45.    At the time Defendant Merck marketed, sold, and distributed Vioxx for use by the general consuming public, including Plaintiffs Sumrall and Varnado, this Defendant knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

46.    Plaintiffs Sumrall and Varnado reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality, and safe and fit for its intended use.

47.    Contrary to such implied warranty, Vioxx was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which they were intended and used

described above.

48.    Defendant Merck conduct in this regard was contributing cause of injuries and damages of Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT VIII

49.    Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

50.    At the time Defendants Searle, Pharmacia, Monsanto and Pfizer marketed, sold and distributed Celebrex for use by the general consuming public, including Plaintiffs Sumrall and Porter, these Defendants knew of the use for which Celebrex was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

51.    Plaintiffs Sumrall and Porter reasonably relied upon the skill and judgment of these Defendants as to whether Celebrex was of merchantable quality and safe and fit for its intended use.

52.    Contrary to such implied warranty, Celebrex was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used as described above.

53.    These Defendants' conduct in this regard was a contributing cause of Plaintiffs Sumrall and Porter's injuries and damages.

-11-

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Mansanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IX

54.    Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

55.    Defendant Merck negligently, recklessly, intentionally and fraudulently made material misrepresentations that Vioxx was safe and effective. Defendant Merck represented Vioxx as safe so that the general consuming public, including Plaintiffs Sumrall and Varnado in particular, would rely upon said representations when purchasing said products.

56.    Prior to and following the introduction of Vioxx into the market as a prescribable pharmaceutical medication, Defendant Merck set in motion a public relations and advertising/marketing campaign to market its product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising. Defendant Merck's representations made concerning Vioxx as a safe and effective drug were made so that Plaintiffs Sumrall and Varnado, and the general consuming public, would rely on said representations and seek prescriptions for this drug from their treating physicians. In fact, Plaintiffs Sumrall and Varnado did rely on Defendant Merck's representations in this regard.

60.    At the time Defendant Merck made these representations, it was aware that these representations were false and/or made these representations with

reckless disregard to their truth. As a result of Defendant Merck's fraud and misrepresentation, Plaintiffs Sumrall and Varnado suffered injuries and damages.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT X

61.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

62.    Defendants Searle, Pharmacia, Monsanto and Pfizer negligently, recklessly, intentionally and fraudulently made material misrepresentations that Celebrex was safe and effective. These Defendants represented Celebrex as safe so that the general consuming public, including Plaintiff's decedent in particular, would rely upon said representations when purchasing said products.

63.    Prior to and following the introduction of Celebrex into the market as a prescribable pharmaceutical medication, Defendants Searle, Pharmacia, Monsanto and Pfizer set in motion a public relations and advertising/marketing campaign to market their product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising. Defendants' representations made concerning Celebrex as a safe and effective drug were made so that Plaintiffs Sumrall and Porter and the general consuming public would rely on said representations and seek prescriptions for this drug from their treating physicians. In fact, Plaintiffs Sumrall and Porter did rely on Defendants Searle, Pharmacia, Monsanto and Pfizer's representations.

-13-

64.    At the time Defendants Searle, Pharmacia, Monsanto and Pfizer made these representations, it was aware that these representations were false and/or made these representations with a reckless disregard to their truth.  As a result of these Defendants' fraud and misrepresentation, Plaintiffs Sumrall and Porter suffered injuries.

WHEREFORE, this Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Mansanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT XI

65.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

66.    Plaintiffs sought the care and treatment of Defendants John Doe #1, M.D., John Doe, M.D. #2, John Doe #3, M.D., and John Doe, #4 M.D. for various ailments and maladies.

67.    In relation to said care and treatment, these Defendants prescribed Vioxx to Plaintiffs Sumrall and Varnado and Celebrex to Plaintiffs Sumrall and Porter.

68.    Defendants John Does, M.D., #1, #2, #3 and #4 knew, or should have known, of the dangerous side effects of these medications, and prescribing said medications in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under like or similar circumstances and rises to the level of medical negligence.

69.    The medical negligence of Defendants John Does, M.D., #1, #2, #3 and #4 was a direct and proximate cause of the Plaintiffs' injuries.

-14-

WHEREFORE, Plaintiffs demand judgment against these Defendants as applicable to each in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## DAMAGES

70.     Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain injuries and damages as a direct and proximate result of Defendants' conduct; and Plaintiffs will respectfully request the Court and jury to determine the amount of loss Plaintiff has suffered and incurred, in the past and in the future. Plaintiffs seek damages for medical expense, past, present, and future; emotional distress, past, present, and future; lost wages, past, present, and future; pain and suffering, past, present and future; permanent physical impairment, and other such injuries as Plaintiffs may show at trial.

71.     At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this produce. These Defendants' conduct exhibits such an entire want of care as to establish that their actions were a results of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiffs' rights. The Plaintiffs are separately and singularly entitled to punitive damages from the corporate Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiffs recover

-15-

damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rate, and that Plaintiffs have such other and further relief, both general and special, to which they may be justly entitled under the facts and attending circumstances.

Respectfully submitted,

AMOS PORTER, FLORA SUMRALL, AND ANNIE LAURIE VARNADO, PLAINTIFFS

BY _____

Attorneys for Plaintiffs

SHANNON LAW FIRM, PLLC
James D. Shannon, MSB# 6731
Elise B. Munn, MSB# 9654
100 West Gallatin Street
Hazlehurst, Mississippi 39083
Telephone: 601-894-2202
Facsimile: 601-894-5033

-16-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

OCT 03 2003

J.T NOBLIN, CLERK
BY_____ DEPUTY

FRANK OMOBUDE, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF JOSEPHINE
OMOBUDE, DECEASED

                                                    PLAINTIFF

VS.                                     CIVIL ACTION NO. 3:03CVS28LN

MERCK & CO., INC. AND
ROBERT M. EVANS, M.D.

                                                    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of plaintiff
Frank Omobude, individually and on behalf of the wrongful death
beneficiaries of Josephine Omobude, to remand pursuant to 28
U.S.C. § 1447. Defendant Merck & Co., Inc. has responded to the
motion and the court, having considered the memoranda of
authorities submitted by the parties, concludes that the motion is
not well taken and should be denied.

Plaintiff, a citizen of Mississippi, brought this suit in the
Circuit Court of Hinds County, Mississippi seeking to recover
damages for the alleged wrongful death of his mother, Josephine
Omobude, which he alleges resulted from her use of the
prescription drug Vioxx. Plaintiff sued Merck, the non-resident
corporation that manufactured and distributed Vioxx, and also
named as a defendant Robert M. Evans, M.D., the local physician
who is alleged to have prescribed Vioxx to Josephine Omobude.
Merck timely removed the case on the basis of diversity



jurisdiction under 28 U.S.C. § 1332,[1] contending, based on the allegations of plaintiff's complaint, that the requirement of an amount in controversy in excess of $75,000 is clearly satisfied,[2] and contending further that there is complete diversity of citizenship since Dr. Evans, though a Mississippi resident, has been fraudulently joined to defeat diversity.  See <u>Heritage Bank</u> <u>v. Redcom Labs., Inc.</u>, 250 F.3d 319, 323 (5th Cir. 2001) (fraudulent joinder of non-diverse will not defeat diversity jurisdiction).

The premise of Merck's fraudulent joinder argument, as gleaned from its notice of removal and its response to plaintiff's motion to remand, is that plaintiff's complaint does not allege a sufficient factual basis for his putative claim against Dr. Evans. In particular, Merck notes that throughout his complaint, plaintiff repeatedly and consistently asserts that Merck encouraged the use of Vioxx in "improper customers;" that it "misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects;" that despite knowledge of the defective nature of its product and for the purpose of increasing its sales and profits at the expense of the

---

[1]    That statute provides, in pertinent part, as follows: (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states.

[2]    The court notes that plaintiff has not disputed that the amount in controversy exceeds $75,000.

2

general public's health and safety, Merck aggressively marketed
Vioxx both directly to the consuming public and indirectly to
physicians through drug sales representatives as effective and
safe and with inadequate warnings and instructions; and that Merck
failed to provide timely and adequate post-marketing warnings or
instructions after the manufacturer knew of the risk of injury
from Vioxx.  On the basis of these allegations, plaintiff alleges
claims against Merck for strict liability, negligence, breach of
express and implied warranties and fraudulent misrepresentation.
Merck argues that in light of plaintiff's repeated allegations
that Merck misrepresented the safety and efficacy of its product
and consistently concealed the known risks and dangers not only
from the consuming public but also from physicians, plaintiff's
charge of medical negligence against Dr. Evans based on nothing
more than a conclusory allegation, wholly unaccompanied by any
factual support, that Dr. Evans "knew, or should have known, of
the dangerous side effects of these medications," and that "his
prescribing such medications in light of such knowledge presents a
deviation from the standard of care," is manifestly insufficient
to state a cognizable claim.

   In similar cases, this court has held that conclusory and
contradictory allegations of knowledge, which were belied by the
factual allegations of the complaint, demonstrated that the
resident defendants against whom such allegations of knowledge
were made, had been fraudulently joined.  See Brown v. Bristol
Myers Squibb Co., Civ. Action No. 4:02CV301LN, slip op. at 11-12

3

(S.D. Miss. Dec. 2, 2002) (resident physician fraudulently joined
where claim was asserted in conclusory terms and contradicted by
allegations of the pharmaceutical manufacturer's concealment or
misrepresentation of information); Louis v. Wyeth-Ayerst
Pharmaceuticals, Inc., Civ. Action No. 5:02CV102LN (S.D. Miss.
Sept. 25, 2000) (same with respect to resident pharmacy
defendant); see also In re Rezulin Prods. Liab. Litig., No. 00
Civ. 2843, 2003 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002)
(physician defendant fraudulently joined based on conclusory
allegations). In the court's opinion, the same conclusion is in
order here.

In so concluding, the court is aware of plaintiff's argument
that "[a] party may plead alternative and inconsistent facts or
remedies against several parties without being barred." Guy James
Constr. Co. v. Trinity Indus., Inc., 644 525, 530 (5th Cir. 1981).
While this may be true generally, the court's point here is that
the plaintiff has not pled inconsistent facts, but rather has pled
consistent facts that are inconsistent with the conclusion he
pleads as to Dr. Evans. Every factual allegation this plaintiff
has made is to the effect that Merck withheld and concealed and
misrepresented the true facts regarding Vioxx; and yet, without
alleging any factual basis for the charge, plaintiff concludes
that Dr. Evans "knew or should have known" the truth about Vioxx
that Merck had misrepresented and concealed.

The court does not suggest that a "knew or should have known"
allegation" will necessarily always be conclusory and hence

4

insufficient to state a cognizable claim simply because it is not
attended by a specific factual allegation as to the source of such
knowledge.  However, in cases like this, where a plaintiff has
specifically alleged facts from which one would necessarily infer
that the defendant in question would not have known information
otherwise alleged to have been misrepresented or concealed from
him, then in the court's opinion, in that limited circumstance, to
sustain his pleading burden, the plaintiff would have to plead at
least some facts tending to show why or how the defendant knew or
should have known of the information that has been misrepresented
to or concealed from him.  Otherwise, the court would be in the
untenable position of assuming that a factual basis exists for a
conclusory allegation that is entirely inconsistent with every
factual allegation in the complaint.  No precedent of which this
court is aware suggests that this would be proper.[3]  The caselaw,

---

[3]     Plaintiff has cited a number of cases from this district
in which claims against physician and pharmacy defendants have
been found sufficient to state a claim, but in the court's
opinion, these cases are readily distinguishable.  Henderson v.
GlaxoSmithKline, No. 5:01CV159BrS (S.D. Miss. March 21, 2000),
involved a question of fraudulent misjoinder, which is not an
issue here.  In Hancock v. Bayer Corp., No. 3:03CV67WS (S.D. Miss.
Apr. 18, 2003), plaintiff alleged that the physicians in question
had committed numerous acts of negligence other than merely
prescribing an allegedly defective drug, such as failing to timely
recognize the plaintiffs' adverse drug reactions, failing to
monitor the plaintiffs, and prescribing the drug in the wrong
dosage and in a manner inconsistent with the product labeling and
contraindicated usages.  Womack v. Bayer Corp., No. 3:03CV157WS
(S.D. Miss. Apr. 18, 2003), involved specific allegations of
alleged negligence by the defendant doctor, including that the
physicians should have known of the risks in light of warnings
actually issued to physicians by Bayer.  No such claims were pled
here.  Likewise in the several Bayer cases remanded by Judge
Pickering and cited by plaintiff, including Easterling v. Bayer

5

in fact, is to the contrary. See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313 (5th Cir. 2002) (stating that the court will not "accept as true conclusory allegations or unwarranted deductions of fact"); Sago v. Wal-Mart Stores, Inc., 2003 WL 22076954, at *2 (S.D. Miss. 2003) (holding that "conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined") (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 392-93 (5th Cir. 2000); cf. Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1996) ("When considering a motion to dismiss for failure to state a claim, the district court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); Ross v. Citifinancial, Inc., 2003 WL 22026346, at *3 (5th Cir. 2003) (noting court's recognition of "the similarity between standards for Federal Rule of Civil Procedure 12(b)(6) (failure to state claim) and fraudulent

---

Corp., No. 2:03CV37PG (S.D. Miss. Apr. 24, 2003), Dearman v. Bayer Corp., No. 2:03CV38PG (S.D. Miss. Apr. 24, 2003), Jones v. Bayer Corp., No. 2:03CV53PG (S.D. Miss. Apr. 24, 2003), Keys v. Bayer Corp., No. 2:03CV39PG (S.D. Miss. Apr. 24, 2003), and Sumrall v. Bayer, No. 2:03CV52PG (S.D. Miss. Apr. 24, 2003), the court found that the plaintiffs had made specific allegations of negligence against the resident doctors "for failing to properly monitor and test each of the Plaintiffs according to the defendant drug companies' recommendations." No such allegations were made in plaintiff's complaint in the case at bar. See infra note 4.

6

joinder" but noting that the latter inquiry is broader); <u>Cranston</u>
<u>v. Mariner Healthcare Mgmt. Co.</u>, 2003 WL 21517999, at *4 (N.D.
Miss. 2003)(stating that on motion to dismiss, "[t]he court will
not accept as true any conclusory allegations or unwarranted
deductions of fact").[4]

---

[4]      The court notes that the only claim plaintiff has
alleged against Dr. Evans in his complaint is medical negligence
based on the allegation that Dr. Evans "knew, or should have
known, of the dangerous side effects of these medications" and his
prescribing "said medications in light of such knowledge." In his
motion to remand, however, plaintiff attempts to recharacterize
and add to his claim against Dr. Evans.  He argues, for example,
that his claim that Merck produced and distributed defective
products does not preclude his claim against Dr. Evans with regard
to his "negligence in prescribing Vioxx or his negligence in
monitoring plaintiff." He argues further that
        [j]ust as Merck failed to adequately warn Plaintiff's
        Decedent's physician, Dr. Evans failed to conduct
        regular monitoring of Plaintiff's Decedent to ensure the
        discovery of potentially serious side effects. . .
        including, not limited to, failing to perform adequate
        tests before the initiation of Vioxx treatment, and
        failing to subsequently perform other tests after
        initiation of Vioxx therapy to monitor any change in the
        status of Plaintiff's decedent. . . . Defendant Evans
        also failed to warn Plaintiff's Decedent of possible
        side effects. . . .
None of these allegations, or any hint of such allegations,
appears anywhere in the complaint which, as to Dr. Evans, alleges
only that he was negligent in prescribing Vioxx when he knew, or
should have known, of the dangers of the drug.  Plaintiff cannot
secure remand on the basis of allegations and claims that are not
set forth in his state court pleading.  <u>See</u> However, the
Cavallinis did not cite, nor have we found, any case in which such
evidence has been considered to determine whether a claim has been
stated against the nondiverse defendant under a legal theory not
alleged in the state court complaint.
<u>Cavallini v. State Farm Mut. Auto Ins. Co.</u>, 44 F.3d 256, 263
263 n.14 (5th Cir. 1995)(rejecting plaintiff's "assertion that
post-removal affidavits can be used to defeat removal by
presenting new causes of action").

7

For the foregoing reasons, the court concludes that plaintiff's motion to remand is not well taken and should be denied.

Accordingly, it is ordered that plaintiff's motion to remand is denied.

SO ORDERED this 3rd day of October, 2003.

_____
UNITED STATES DISTRICT JUDGE